1      Northern district of Florida

2      111 N. Adams St.

3      Tallahassee, Florida 32301

4      Daniel James Silva

5      Plaintiff            *4:21. cv 24 MW-M<del>M</del>fF*

6

7      Venable LLP

8      ROBERT L HINKLE,

9      MICHAEL J FRANK,

10      ALLEN C WINSOR,

11      CHARLES A STAMPELOS

12

13      Defendants

14

15      Certified RICO violations Complaint

FILED USDC FLND TL
JAN 13 '21 AM 11:42

1    I Daniel James silva bring this citizenship of diversity lawsuit vs the defendant's

2    for violating the Racketeer Influenced and Corrupt Organizations Act, the

3    following complaint explains in exact detail how named defendants committed at

4    least 1 count of 18 U.S. Code § 3 - Accessory after the fact for 1 RICO violation.

5

6    Defendants and addresses involved,

7

8    Daniel James Silva

9    PO BOX 493, Colfax, nc,27235

10

11    Venable LLP

12    600 Massachusetts Ave NW, Washington, DC 20001

13

14    ROBERT L HINKLE,

15    111 N. Adams St. Tallahassee, Florida 32301

16

17

1    MICHAEL J FRANK,

2    111 N. Adams St. Tallahassee, Florida 32301

3

4    ALLEN C WINSOR,

5    111 N. Adams St. Tallahassee, Florida 32301

6

7    CHARLES A STAMPELOS

8    111 N. Adams St. Tallahassee, Florida 32301

9

10

11    <h1 style="text-align:center">Introduction</h1>

12    I Mr. Silva have been in 4 lawsuits and 1 appeal over 4 years with Venable LLP,

13    the main Venable lawyer James Douglas Baldridge, Bar Number: 708070 which

14    though most of the time Mr. Baldridge and his client Taylor Alison Swift have

15    committed enough obstruction of justice 1505 and 18 U.S. Code § 241 -

16    Conspiracy against rights though 10 lawsuits to spend the rest of their lives in a

17    ***federal penitentiary.***

1

2 ### ***Factual background***

3

4 I've had the following cases with Venable LLP.

5

6 # ***Northern district of Florida***

7 4:19-cv-00286-RH-MJF SILVA v. SWIFT et al

8 ROBERT L HINKLE, presiding

9 MICHAEL J FRANK, referral

10

11 # Middle district of Florida

12 3:17-cv-00292-HES-MCR Silva v. Swift

13 Harvey E. Schlesinger, presiding

14 Monte C. Richardson, referral

15

16

4

1    3:18-cv-00688-MMH-JRK Silva v. TAS Rights Management, LLC

2    Marcia Morales Howard, presiding

3    James R. Klindt, referral

4

5    3:19-cv-00354-TJC-MCR Silva v. Tas Rights Management LLC

6    Timothy J. Corrigan, presiding

7    Monte C. Richardson, referral

8    Ive attempts many more lawsuits 10 and 1 appeal but corrupt judges have prevents

9    me from even serving the lawsuits on the defendants.

10

11   To make very long story very short though out ALL these cases Taylor swift, Doug

12   Baldridge, and Venable LLP along with all the Judges as named defendants

13   committed at least the following crimes,

14     Multiple counts obstruction 1505

15     Multiple counts counts 18 U.S. Code § 241 - Conspiracy against rights

16     Also 42 U.S. Code § 1985. Conspiracy to interfere with civil rights

1   **And at least 1 count of 18 U.S. Code § 3 - Accessory after the fact for 1 count**

2   **of Rico.**

3

4   In all cases listed above,

5   In 1 way or the other the cases involved fraudulent trademarks 1989 trademarks

6   (1989 sn: 86363039) and  (1989 sn: 86369161).

7   due to on August 11th 2014  under direction of Taylor swift  filed for Trademark

8   (1989 sn: 86363039) and was granted on January 16th 2018 which covered

9   Jewelry; charms; bracelets; lapel pins; necklaces; earrings; clocks; watches; watch

10   bands; watch straps Clothing, namely, dresses, jackets, coats, headbands,

11   bandanas, pajamas, bathrobes, aprons, headwear, caps, hats, visors, gloves,

12   hosiery, scarves, sweatshirts, hooded pullovers, shirts, **((T-SHIRTS)),** jerseys,

13   shorts, pants, sweatpants, footwear, and tops for babies, children, and adults; belts

14   for clothing; shoes among other items also on August 18th 2014 under Swifts

15   direction filed for another trademark (1989 sn: 86369161) which was granted on

16   September 19th 2017 which covered pre-recorded DVD's and CD's featuring

17   performances by an individual; musical sound recordings; audio recordings

18   featuring music; musical video recordings; series of musical sound recordings;

19   musical sound recordings; video recordings featuring music; downloadable audio

1   files; also Entertainment services in the nature of live musical performances ect

2   (1989 world tour).

3    both 1989 trademarks (1989 sn: 86363039) and  (1989 sn: 86369161) was applied

4   for due to the fact that Taylor swift crated a musical album called 1989, that was

5   released on October 27th 2014, the album sold 1,287,000 copies in its first week of

6   release as of January 2018 (1989) has sold 6.11 million copies in the USA , Tas

7   management stands for (Taylor Alison Swift) management. Not only did she apply

8   for trademarks (1989 sn: 86363039) and (1989 sn: 86369161) but also at least 66

9   other trademarks with the number 1989 in it from (Party likes its 1989 sn:

10   86434738) and ( the 1989 world tour sn: 86607114).

11

12   The only problem is the real name of her album is (T.S. 1989 sn:86369455) filed

13   for on august 18th 2014 and granted on June 27th 2017, meaning that both

14   trademarks (1989 sn: 86363039) and  (1989 sn: 86369161) are both fraudulent

15   misrepresentations of her album meaning that 2- 3rd degree felonies were

16   committed to obtain both marks,  at the bottom of each trademark applications

17   made in the united states there is a declaration that every trademark lawyer has to

18   electronically sign that states The signatory being warned that willful false

19   statements and the like are punishable by fine or imprisonment, or both, under 18

1   U.S.C. Section 1001, and that such willful false statements and the like may

2   jeopardize the validity of the application or any registration resulting therefrom,

3   declares that all statements made of his/her own knowledge are true and all

4   statements made on information and belief are believed to be true. Meaning both

5   1989 trademarks (1989 sn: 86363039) and (1989 sn: 86369161) were obtained by

6   braking statue 18 U.S.C. . Section 1001 (false statements).

7

8   (18 U.S.C. § 1001) is the common name for the United States federal process

9   crime laid out in Section 1001 of Title 18 of the United States Code, which

10   generally prohibits knowingly and willfully making false or fraudulent statements,

11   or concealing information, in "any matter within the jurisdiction" of the federal

12   government of the United States

13   This statute is used in many contexts. Most commonly, prosecutors use this statute

14   to reach cover-up crimes such as perjury, false declarations, and obstruction of

15   justice and government fraud cases,

16   Since finding out all this information I've been involved in 10 lawsuits with Taylor

17   swift and tas management and one appeal, all have fallen short of righteous justice

18   due to filing all pro se and my inexperience, and also judicial corruption.

19

1   On April 3rd 2015, I purchased the domain name 1989shirts.com from

2   Godaddy.com, I was planning on selling shirts that say 1989 on them the year of

3   my birth, on august 1st 2016 I turned 1989shirts.com into a physical online store

4   though godaddy.com, but after I noticed the pending trademark for trademark

5   (1989 sn: 86363039) which (T-shirts) is covered, I shutdown my website relying

6   on the defendant fraud causing me to lose revenue that figuring she was legally

7   obtaining the mark (1989). As of January 16th, 2018, the date that trademark (1989

8   sn: 86363039) was granted the following federal statues prevent me for selling

9   shirts that display the number 1989 on them on 1989shirts.com.

10  2.  the Trademark Counterfeiting Act of 1984 is a United States federal law that

11  amended the federal criminal code to make it a federal offense to violate the

12  Lanham Act by the intentional use of a counterfeit trademark or the unauthorized

13  use of a counterfeit trademark. The act established penalties of up to five years

14  imprisonment and/or a $250,000 fine ($1,000,000 fine for a corporation or other

15  legal entity) for selling or attempting to sell counterfeit goods or services. It

16  increased such penalties for a second or subsequent conviction under the Act.

17  Making it a felony to sell shirts that display the number 1989.

18  And the 2nd  law

3. 15 U.S. Code § 1125. False designations of origin, false descriptions, and dilution forbidden section (d)(a)(ii)(i) registers, traffics in, or uses a domain name that in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; which means under federal I can't own www.1989shirts.com or even sell a single 1989 shirt without breaking the law causing me to lose revenue on www.1989shirts.com.

4. tas management and Taylor swift are the same entity. all Tas managements filings for trademarks  (1989 sn: 86363039) and  (1989 sn: 86369161) are for Taylor swift as her Proxy so all allegations committed by Tas management was done by Taylor swifts direction or the direction of a chief officer in charge to take care of Taylor swifts trademarks making her liable for her company's actions.

5. Taylor swift, tas management and Doug Baldridge have committed multiple counts of obstruction of justice 1505 in all my cases where I haven't received one fair hearing in ANY of my cases including this ONE. The amount of obstruction rises to the level of RICO violations, 1st rico violation   RICO Requires no more than a slight effect upon interstate commerce. United States v. Doherty, 867 F.2d 47, 68 (1st Cir. 1989). United States v. Murphy, 768 F.2d 1518, 1531 (7th Cir.

1  1985). cert. denied, 106 S.Ct. 1188 (1986). Swift used fraud and with help from

2  oath breaker public servant Judge Marcia Morales Howard in case 3:17-cv-00814-

3  MMH-JRK Silva v. Swift to use the united states governments trademark laws

4  against me so I could not sell shirts that display the number 1989.

5

6  <u>HOW RICO WAS COMMITED,</u>

7

8  Ok so how there's somewhat of a understanding of the facts involved in this case

9  to date 4 years and 10 lawsuits is hard to described in a few pages, anyway where

10  rico violations kick in,

11  <u>**on 5/19/2020 I went to address 2201 Harding place to serve defendant Taylor**</u>

12  <u>**Alison swift and also to attempt an arrest on her for the following crimes,**</u>

13  **Multiple counts of Obstruction of justice 1505**

14  **Multiple RICO violations**

15  **Multiple counts of 18 U.S. Code § 241. Conspiracy against rights and 42 U.S.**

16  **Code § 1985. Conspiracy to interfere with civil rights**

17  And multiple other crimes along with her lawyer Doug Baldridge he orchestrated

18  her crimes ill explain below.

1   I had gone to address 2201 Harding place and when I got there I was met by 2

2   armed guards but I did not attempt to beach the gate, I handed over a copy of the

3   my civil rights lawsuit for case  4:19-cv-00286-RH-MJF SILVA v. SWIFT et al. a

4   certified complaint and a singed affidavit explaining swifts crimes in detail, on the

5   arresting affidavit by officer Andrew Mullen which he stated (the defendant was

6   trying to serve federal rico violations paperwork to a resident) admitting he knew

7   swift lives at the house  and address, he later stated ( the defendant was there to

8   serve papers and to make a citizen's arrest.  Officer MULLEN has blatantly

9   admitted that he not only **knew why I was there but after understating why I**

10  **was there, feloniously obstructing my legitimate citizen's arrest.**

11

12  **As a federal judge later stated quote (At  bottom,  Plaintiff    has  not  offered**

13  **"more than a sheer possibility that [Officer Mullen] has acted unlawfully.**"

14  Iqbal, 556 U.S. at 678. Accordingly, the Complaint "stops short of the line between

15  possibility and plausibility of 'entitlement to relief.'"Id. (quoting Twombly, 550

16  U.S. at 557.) Accordingly, Plaintiff's Fourth Amendment claim must, therefore, be

17  dismissed for failure to state a claim.)

18

1    See I had mistaken obstruction 1505 for 1503 in case NO. 3:20-cv-00938 and the

2    judge would happily play along with my mistake quote( because Section 1505 is a

3    federal criminal statute that does not provide a basis for liability under Section

4    1983. See Hamilton v. Reed, 29 F. App'x 202, 204 (6th Cir. 2002) (Section 1505

5    does not provide a private right of action), Levering v. Hinton, No. 2:07-CV-989,

6    2008 WL 4425961, at *7 dismissing Section 1983 claim premised on violation of

7    Section 1505) (S.D. Ohio Sept. 25, 2008); see also Moldowan, 578 F.3d at 391

8    (reaching same conclusions regarding 18 U.S.C. § 1503, and explaining that

9    statute containing criminal penalties for obstruction of justice does not contain

10   "rights-creating" language). See officer Andrew Mullen had committed 2 counts of

11   obstruction of justic1503 (18 U.S.C. § 1503 defines "obstruction of justice" as an

12   act that "corruptly or by threats or **_force_**, or by any threatening letter or

13   communication, influences, obstructs, or impedes, or endeavors to influence,

14   obstruct, or impede, the due administration of justice."

15

16   Taylor swift has paid Doug Baldridge 100s of thousands to over a million dollars

17   in retainers over 4 years and 4 lawsuits and 1 appeal to obstruct both 1989

18   trademarks (1989 sn: 86363039) and (1989 sn: 86369161), **committing accessory**

19   **to a RICO violation ( mullens arrest) in the process** , a person who has

1   committed "**at least two acts of racketeering activity**" drawn from a list of 35

2   crimes—27 federal crimes and 8 state crimes—within a 10-year period can be

3   charged with racketeering if such acts are related in one of four specified ways to

4   an "enterprise". Those found guilty of racketeering can be fined up to $25,000 and

5   sentenced to 20 years in prison per racketeering count. In addition, the racketeer

6   must forfeit all ill-gotten gains and interest in any business gained through a

7   pattern of "racketeering activity." RICO also permits a private individual "damaged

8   in his business or property" by a "racketeer" to file a civil suit. The plaintiff must

9   prove the existence of an "enterprise". The defendant(s) are not the enterprise; in

10  other words, the defendant(s) and the enterprise are not one and the same. There

11  must be one of four specified relationships between the defendant(s) and the

12  enterprise: either the defendant(s) invested the proceeds of the pattern of

13  racketeering activity into the enterprise (18 U.S.C. § 1962(a)); or the defendant(s)

14  acquired or maintained an interest in, or control of, the enterprise through the

15  pattern of racketeering activity (subsection (b)); or the defendant(s) conducted or

16  participated in the affairs of the enterprise "through" the pattern of racketeering

17  activity (subsection (c)); or the defendant(s) conspired to do one of the above

18  (subsection (d) In essence, the enterprise is either the 'prize,' 'instrument,' 'victim,'

19  or 'perpetrator' of the racketeers. A civil RICO action can be filed in state or federal

20  court. In Beauford v. Helmsley, ___ S. Ct. ____ (1989), the Supreme Court held

1    that it is not necessary to prove that multiple schemes, episodes or transactions

2    occurred in order to establish a "pattern of racketeering activity," as long as the

3    racketeering acts were "neither isolated nor sporadic." The racketeering activity is

4    not required to benefit the enterprise. The participants in the scheme are not

5    required to have personally profited, though some did.  United States v. Killip, 819

6    F.2d 1542, 1`549 (10th Cir. 1987.)

7    See MR Mullen had obstructed my citizens arrest for federal crimes,

8     he preemption doctrine refers to the idea that a higher authority of law will

9    displace the law of a lower authority of law when the two authorities come into

10    conflict.

11    ***Federal Preemption***

12    ***When state law and federal law conflict, federal law displaces***, or preempts, state

13    law, due to the Supremacy Clause of the Constitution. U.S. Const. art. VI., § 2.

14    Preemption applies regardless of whether the conflicting laws come from

15    legislatures, courts, administrative agencies, or constitutions. For example, the

16    Voting Rights Act, an act of Congress, preempts state constitutions, and FDA

17    regulations may preempt state court judgments in cases involving prescription

18    drugs.

19

1    Congress has preempted state regulation in many areas. In some cases, such as

2    medical devices, Congress preempted all state regulation. In others, such as labels

3    on prescription drugs, Congress allowed federal regulatory agencies to set national

4    minimum standards, but did not preempt state regulations imposing more stringent

5    standards than those imposed by federal regulators. Where rules or regulations do

6    not clearly state whether or not preemption should apply, the Supreme Court tries

7    to follow lawmakers' intent, and prefers interpretations that avoid preempting state

8    laws.

9    State Preemption: Outright, Express, and Implied Preemption

10   Similar to federal and state laws, state laws will usually prevail when state and

11   local laws are in conflict. As such, the main question courts will seek to answer is

12   whether there is even a conflict.

13

14   Typically, 3 types of conflicts exist regarding preemption:

15

16   ***Outright conflict - when an ordinance directly opposes a state law***

17   My legal ***attempted*** arrest at a property Taylor Swift purchased for her Irish

18   mother(Andrea finley) (Harding Place) quote from news article ( Taylor Swift buys

1    parents $2.5million Nashville mansion(Her parents Andrea Gardner swift and

2    Scott Kingsley Swift will be the newest residents in the area and will become

3    neighbors to the likes of Nicole Kidman and Keith Urban.The sprawling abode

4    boasts more than 5,600 square feet of luxury living set in nearly six acres of lush

5    landscaped hillside.The home also boasts a spacious pool house which covers

6    2,000 square feet, state of the art appliances with a luxury finish.( The historic

7    Northumberland Estate was built in 1934 by U.S. ambassador to Denmark Guilford

8    Dudley Jr. and the property was previously owned by Universal Music Group

9    chairman Luke Lewis, According to On The Red Carpet.com But given her hefty

10    earning power the mansion certainly wont make a dent in her bank balance as

11    Forbes listed her as 2011's 7th most powerful celebrity with earnings of

12    $45million.( Still the generous gesture from Taylor comes just months after she

13    dropped nearly one and a half million dollars on a home for Andrea and Scott in

14    April. Despite her young years Miss Swift is building quite the prime property

15    portfolio and has homes in L.A. and another property in the Nashville area.

16    My attempted arrest for ***federal crimes, multiple counts of obstruction 1505*** by

17    Taylor swift is DISPLACED by the state Tennessee law of criminal trespass (2010

18    Tennessee Code

19    Title 39 - Criminal Offenses

1  Chapter 14 - Offenses Against Property

2  Part 4 - Burglary and Related Offenses

3  39-14-405 - Criminal trespass.

4  39-14-405. Criminal trespass.

5  (a)  A person commits criminal trespass if the person enters or remains on

6  property, or any portion of property, without the consent of the owner. Consent

7  may be inferred in the case of property that is used for commercial activity

8  available to the general public or in the case of other property when the owner has

9  communicated the owner's intent that the property be open to the general public.

10

11  ***Jay schaudies( is a proxy) straw owner of Harding place, ms. Swift loves her***

12  ***privacy.***

13

14  I had gone to a house, miss swift bought for her parents and i attempted to arrest

15  ms. Swift ***where Andrew mullen rico obstructed my arrest,*** I was attempting to

16  arrest swift for fraudulent trademarks 1989 trademarks (1989 sn: 86363039) and

17  (1989 sn: 86369161). ***(Mullen committed 2 counts of 1503).  Which equals 1***

18  ***count of rico, meaning the great Venable LLP***

1    *600 Massachusetts Ave NW, Washington, DC 20001, is a least guilt of 1 count of*

2    *18 U.S. Code § 3 - Accessory after the fact for 1 RICO violation.*

3    *Andrew mullens 1 rico confirmed rico violation,*

4

5    *Her father (Scott swift)has committed the following state and federal crimes*

6    *protecting Alison swift,*

7    *1st obstruction of justice 1505 (multiple counts) being that lawsuit  4:19-cv-*

8    *00286-RH-MJF SILVA v. SWIFT et al was pending at the time,*

9    *2nd 2010 Tennessee Code*

10    *Title 39 - Criminal Offenses*

11    *Chapter 11 - General Provisions*

12    *Part 4 - Criminal Responsibility*

13    *39-11-411 - Accessory after the fact.*

14    *(a)  A person is an accessory after the fact who, after the commission of a felony,*

15    *with knowledge or reasonable ground to believe that the offender has committed*

16    *the felony, and with the intent to hinder the arrest, trial, conviction or*

17    *punishment of the offender:*

*(1)  Harbors or conceals the offender.*

*(2)  Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or*

*(3)  Warns the offender of impending apprehension or discovery.*

*(b)  This section shall have no application to an attorney providing legal services as required or authorized by law.*

*(c)  Accessory after the fact is a Class E felony.*

*[Acts 1989, ch. 591, § 1; 1994, ch. 978, § 4; 1995, ch. 281, § 1.]*

*Also scott swift an 39-11-411. Accessory TO A FALSE POLICE REPORT*

1    ***2010 Tennessee Code***

2    ***Title 39 - Criminal Offenses***

3    ***Chapter 16 - Offenses Against Administration of Government***

4    ***Part 5 - Interference with Government Operations***

5    ***39-16-502 - False reports.***

6    ***39-16-502. False reports.***

7

8    ***(a)  It is unlawful for any person to:***

9

10   ***(1)  Initiate a report or statement to a law enforcement officer concerning an***

11   ***offense or incident within the officer's concern knowing that:***

12

13   ***(A)  The offense or incident reported did not occur;***

14

15   ***(B)  The person has no information relating to the offense or incident***

16   ***reported; or***

17

1    _____ *(C)  The information relating to the offense reported is false; or*

2

3    *So with all this being said the following count will be the legal precedent  for*

4    *beingi this case,*

5

6    Being that Venable LLP at the DC location has committed at least 1 count of

7    accessory to RICO, who knows maybe Taylor swift, Doug Baldridge and katie

8    wright monnoe is each a single count of RICO WHO KNOWS,

9    Being *that I just proved my case prima facie and res ipsa loquitur and also  civil*

10   *cases only require a (Preponderance of the evidence is one type of evidentiary*

11   *standard used in a burden of proof analysis. Under the preponderance standard,*

12   *the burden of proof is met when the party with the burden convinces the fact finder*

13   *that there is a greater than 50% chance that the claim is true. This is the burden*

14   *of proof in a civil trial.*

15

16   *All the evidence is in this complaint to grant a summary judgement and or*

17   *motion for saction granted, is in public record.*

18

1  ***The following laws allow me to bring this suit,***

2

3  **Venue (28 U.S. Code § 1391**. Venue generally (a) Applicability of Section. —

4  Except as otherwise provided by law—

5  (1) this section shall govern the venue of all civil actions brought in district courts

6  of the United States; and

7  (2) the proper venue for a civil action shall be determined without regard to

8  whether the action is local or transitory in nature.

9  (b) Venue in General. —A civil action may be brought in—

10  (1) a judicial district in which any defendant resides, if all defendants are residents

11  of the State in which the district is located.

12  **(2) a judicial district in which a substantial part of the events or omissions**

13  **giving rise to the claim occurred, or a substantial part of property that is the**

14  **subject of the action is situated; or**

15  (3) if there is no district in which an action may otherwise be brought as provided

16  in this section, any judicial district in which any defendant is subject to the court's

17  personal jurisdiction with respect to such action.

18  (c) Residency.—For all venue purposes—

1   (1) a natural person, including an alien lawfully admitted for permanent residence

2   in the United States, shall be deemed to reside in the judicial district in which that

3   person is domiciled.

4   (2) an entity with the capacity to sue and be sued in its common name under

5   applicable law, whether or not incorporated, shall be deemed to reside, if a

6   defendant, in any judicial district in which such defendant is subject to the court's

7   personal jurisdiction with respect to the civil action in question and, if a plaintiff,

8   only in the judicial district in which it maintains its principal place of business; and

9   (3) a defendant not resident in the United States may be sued in any judicial

10  district, and the joinder of such a defendant shall be disregarded in determining

11  where the action may be brought with respect to other defendants.

12

13  **Memorandum of law to bring this case and defense against any dismissal,**

14  Dismissal Issues:

15  The Complaint should not be dismissed unless it appears to a certainty that

16  Plaintiffs would be entitled to no relief under any state of facts that

17  could be proved in support of the claims. See Gomez v Toledo (1980, US) 64 L

18  Ed 2d 572, 100 S Ct 1920.

1   The allegations of a Complaint prepared by a state prisoner acting pro se

2   are generally taken as true for purposes of motion to dismiss. See Hughes v

3   Rowe (1980, US) 66 L Ed 2d 163, 101 S Ct 173.

4   RULE 60

5   The final judgement of this Court should be vacated under Rule 60(B). The

6   Court is requested to weigh the interest in substantial justice against the

7   simple need for preserving finality of the judgement. See Expenditures

8   Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institute, 1974, 500 F.2d.

9   808, 163 U.S. App.D.C.140. See also Brown v. Clark Equipment Co., D.C. Mc.

10  1982, 961 F.R.D. 166.

11

12  Court -a judgement to dismiss because of some trumped up technicality giving

13  excuse to dismiss a non-lawyer pro se litigant's complaint with merit in a

14  lawyer dominated Court hearing. In support of Plaintiffs Motion to vacate

15  Judgement, the following cases are offered; Picking v. Pennsylvania Railway,

16  (151 F2d.240) Third Circuit Court of Appeals.

1

2    ***In Walter Process Equipment v. Food Machinery 382 U.S. 172 (1965) it was held***

3    ***that in a "motion to dismiss", the material allegations of the complaint are***

4    ***taken as admitted."***

5    ***Case law to bring this lawsuit as a rico violation in part***

6    ***Rico Case Law:***

7    ***The defendants constitute an illegal enterprise in acts or threat of acts in***

8    ***violation of Civil Rico Federal Racketeering Act USC 18, 1961-1963 et seq.***

9    ***The following are particular violations:***

10

11

12    18 USC 3: Accessory after the fact, knowing that an offense has been

13        committed against the United States, relieves, receives, comforts or assists

14        the offender in order to hinder or prevent his apprehension, trial or punishment.

15

1    **18 USC 242: Deprivation of Rights color of law of rights protected under the**

2    **Constitution of the U.S.,**

3

4    18 USC 512: Tampering with a witness

5

6    **18 USC 1341: Mail fraud**

7

8    **18 USC 1343: Wire fraud**

9

10    **18 USC 1503: Obstruction of justice**

11

12    18 USC 1510: Obstructing of criminal investigation

13

14    18 USC 1513: Retaliating against a witness, victim or informant

15

16    **18 USC 1951: Interference with interstate commerce**

18 USC 1621: Perjury

**18 USC 1001: Fraud**

Continued statute of limitation in ongoing activity (conspiracy) (bankruptcy fraud)

Non-Lawyer pro se litigants not to be held to same standards as a practicing lawyer

Many pro se litigants will use this in their pleadings; "Pleadings in this case are being filed by Plaintiff In Propria Persona, wherein pleadings are to be considered without regard to technicalities. Propria, pleadings are not to be held to the same high standards of perfection as practicing lawyers. See Haines v. Kerner 92 Sct 594, also See Power 914 F2d 1459 (11th Cir1990), also See Hulsey v. Ownes 63 F3d 354 (5th Cir 1995). also See In

1   Re: HALL v. BELLMON 935 F.2d 1106 (10th Cir. 1991)."

2

3   In Puckett v. Cox, it was held that a pro-se pleading requires less

4   stringent reading than one drafted by a lawyer (456 F2d 233 (1972 Sixth

5   Circuit USCA). Justice Black in Conley v. Gibson, 355 U.S. 41 at 48 (1957)

6   "The Federal Rules rejects the approach that pleading is a game of skill in

7   which one misstep by counsel may be decisive to the outcome and accept the

8   principle that the purpose of pleading is to facilitate a proper decision on

9   the merits." According to Rule 8(f) FRCP and the State Court rule which

10  holds that all pleadings shall be construed to do substantial justice."

11

12  Defense against dismissal of complaint under Rule 12-B

13  There is legal sufficiency to show Plaintiff is entitled to relief under his

14  Complaint. A Complaint should not be dismissed for failure to state a claim

15  unless it appears beyond a doubt that the Plaintiff can prove no set of

16  facts in support of his claim which would entitle him to relief. See Conley

29

1  v. Gibson, 355 U.S. 41, 45-46 (1957) also Neitzke v. Williams, 109 S. Ct.

2  1827, 1832 (1989). Rule 12(b)(6) does not countenance dismissals based on a

3  judge's disbelief of a complaint's factual allegations. In applying the

4  Conley standard, the Court will "accept the truth of the well-pleaded

5  factual allegations of the Complaint."

6

7  Brotherhood of Trainmen v. Virginia ex rel. Virginia State Bar, 377 U.S. 1; v.

8  Wainwright, 372 U.S. 335; Argersinger v. Hamlin, Sheriff 407 U.S. 425 Litigants

9  can be assisted by unlicensed laymen during judicial proceedings. Conley v.

10  Gibson, 355 U.S. 41 at 48 (1957) "Following the simple guide of rule 8(f) that all

11  pleadings shall be so construed as to do substantial justice"... "The federal rules

12  reject the approach that pleading is a game of skill in which one misstep by counsel

13  may be decisive to the outcome and accept the principle that the purpose of

14  pleading is to facilitate a proper decision on the merits." The court also cited Rule

15  8(f) FRCP, which holds that all pleadings shall be construed to do substantial

16  justice. Davis v. Wechler, 263 U.S. 22, 24; Stromberb v. California, 283 U.S. 359;

17  NAACP v. Alabama, 375 U.S. 449 "The assertion of federal rights, when plainly

18  and reasonably made, are not to be defeated under the name of local practice."

19  Elmore v. McCammon (1986) 640 F. Supp. 905 "... the right to file a lawsuit pro se

1    is one of the most important rights under the constitution and laws." Federal Rules

2    of Civil Procedures, Rule 17, 28 USCA "Next Friend" A next friend is a person

3    who represents someone who is unable to tend to his or her own interest. Haines v.

4    Kerner, 404 U.S. 519 (1972) "Allegations such as those asserted by petitioner,

5    however inartfully pleaded, are sufficient"... "which we hold to less stringent

6    standards than formal pleadings drafted by lawyers." Jenkins v. McKeithen, 395

7    U.S. 411, 421 (1959); Picking v. Pennsylvania R. Co., 151 Fed 2nd 240; Pucket v.

8    Cox, 456 2nd 233

9    Pro se pleadings are to be considered without regard to technicality; pro se

10   litigants' pleadings are not to be held to the same high standards of perfection as

11   lawyers. Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are

12   intended to serve as a means of arriving at fair and just settlements of controversies

13   between litigants. They should not raise barriers which prevent the achievement of

14   that end. Proper pleading is important, but its importance consists in its

15   effectiveness as a means to accomplish the end of a just judgment." NAACP v.

16   Button, 371 U.S. 415); United Mineworkers of America v. Gibbs, 383 U.S.715;

17   and Johnson v. Avery, 89 S. Ct. 747 (1969)

18   it gives."

19

1

2    ***Right to sue federal judges***

3    ***Pulliam v. Allen, 466 U.S. 522 (1984) (declaratory judgement)***

4    ***Which reads,***

5    ***Judicial immunity is not a bar to prospective injunctive relief against a judicial***

6    ***officer, such as petitioner, acting in her judicial capacity. Pp. 466 U. S. 528-543.***

7    ***(a) Common law principles of judicial immunity were incorporated into the***

8    ***United States judicial system, and should not be abrogated absent clear***

9    ***legislative intent to do so. Although there were no injunctions against common***

10   ***law judges, there is a common law parallel to the § 1983 injunction at issue here***

11   ***in the collateral prospective relief available against judges through the use of the***

12   ***King's prerogative writs in England. The history of these writs discloses that the***

13   ***common law rule of judicial immunity did not include immunity from***

14   ***prospective collateral relief. Pp. 466 U. S. 528-536.***

15

16   ***(b) The history of judicial immunity in the United States is fully consistent with***

17   ***the common law experience. There never has been a rule of absolute judicial***

18   ***immunity from prospective relief, and there is no evidence that the absence of***

32

1  *that immunity has had a chilling effect on judicial independence. Limitations on*

2  *obtaining equitable relief serve to curtail or prevent harassment of judges*

3  *through suits against them by disgruntled litigants. Collateral injunctive relief*

4  *against a judge, particularly when that relief is available through § 1983, also*

5  *raises a concern relating to the proper functioning of federal-state relations, but*

6  *that*

7  *Page 466 U. S. 523*

8  *concern has been addressed directly as a matter of comity and federalism,*

9  *independent of principles of judicial immunity. While there is a need for restraint*

10  *by federal courts called upon to enjoin actions of state judicial officers, there is no*

11  *support for a conclusion that Congress intended to limit the injunctive relief*

12  *available under § 1983 in a way that would prevent federal injunctive relief*

13  *against a state judge. Rather, Congress intended § 1983 to be an independent*

14  *protection for federal rights, and there is nothing to suggest that Congress*

15  *intended to expand the common law doctrine of judicial immunity to insulate state*

16  *judges completely from federal collateral review. Pp. 466 U. S. 536-543.*

17

18  *2. Judicial immunity is no bar to the award of attorney's fees under the Civil*

19  *Rights Attorney's Fees Awards Act. Congress has made clear in the Act its intent*

33

1  *that attorney's fees be available in any action to enforce § 1983. And the*

2  *legislative history confirms Congress' intent that an attorney's fee award be*

3  *made available even when damages would be barred or limited by immunity*

4  *doctrines. Pp. 466 U. S. 543-544.*

5  *690 F.2d 376, affirmed.*

6  *BLACKMUN, J., delivered the opinion of the Court, in which BRENNAN,*

7  *WHITE, MARSHALL, and STEVENS, JJ., joined. POWELL, J., filed a*

8  *dissenting opinion, in which BURGER, C.J., and REHNQUIST and*

9  *O'CONNOR, JJ., joined, post, p. 466 U. S. 544. Page 466 U. S. 524*

10

11  *Jurisdictional Issues:*

12  It is proper for this District Court to take Jurisdiction of any civil

13  action authorized by law to be commenced by any person. See Title 28 Section

14  1343 (1)(2)(3)(4) .

15  Jurisdiction is proper under Title 28 Sections 1332, 1335, 1357, 1441 and 1603.

16  he First issue is "Convenience" and second issue is the "interest-of-

17  justice" standard under 28 USCA 1406.

1  Btw all judges orders in all cases vs me and swift are void by law,

2  (1) No petition in the record of the case, Brown v. VanKeuren,

3  340 Ill. 118,122 (1930).

4  (2) Defective petition filed, Same case as above.

5  (3) Fraud committed in the procurement of jurisdiction, Fredman

6  Brothers Furniture v. Dept. of Revenue, 109 Ill. 2d 202, 486 N.E. 2d

7  893(1985).

8  **The following judges**

9  **ROBERT L HINKLE,**

10  **MICHAEL J FRANK,**

11  **ALLEN C WINSOR,**

12  **CHARLES A STAMPELOS**

13  **Are not only judges in the NDOF but all violated my 5th and 14th amendment**

14  **right of due process by not granting me an opportunity to be heard**

15  **committing 2 counts of obstructing 1505 and 18 U.S. Code § 242 - Deprivation**

16  **of rights under color of law, all their orders are void by law,**

17  **an order is VOLD as following case studies prove**

35

1. A voidable order is an order that must be declared void by a judge to be void; a void order is an order issued without jurisdiction by a judge and is

2. void ab initio and does not have to be declared void by a judge to be void.

3. Only an inspection of the record of the case showing that the judge was without jurisdiction or violated a person's due process rights, or where fraud was involved in the attempted procurement of jurisdiction, is sufficient for an order to be void. Potenz Corp. v. Petrozzini, 170 Ill. App. 3d 617, 525 N.E.2d 173, 175 (1988). In instances herein, the law has stated that the orders are void ab initio and not voidable because they are already void. Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties. See:

Wahl v. Round Valley Bank, 38 Ariz. 411, 300 P.955 (1931) Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146 P. 203 (1914) Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940)

4. A void judgment is one which, from its inception, was a complete nullity and without legal effect. See Lubben v. Selective Service System Local Bd. No. 27, 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972)

**5.A void judgment is one which from the beginning was complete nullity and without any legal effect. See Hobbs v. U.S. Office of Personnel Management, 485 F.Supp. 456 (M.D. Fla. 1980).**

**6.Void judgment is one that, from its inception, is complete nullity and without legal effect. Holstein v. City of Chicago, 803 F.Supp. 205, reconsideration denied 149 F.R.D. 147, affirmed 29 F.3d 1145 (N.D. Ill. 1992).**

**7.Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process, U.S.C.A. Const. Amend. 5-Triad Energy Corp. v. McNell, 110 F.R.D. 382 (S.D.N.Y. 1986).**

# Specific relief requested

**I Daniel James silva pray this court grants for the following relief**

## Declaratory Judgement

*A1. Was my attempted citizen's arrest on Taylor Alison swift at 2201 Harding place (constitutional)?*

*A2. Was my arrest by Nashville metro at 2201 Harding place(unconstitutional)?*

1   *A.3  was judge Hinkle's order (constitutional)? ( DKT118 Filed & Entered:*

2   *06/18/2020 dismissing my case 4:19-cv-00286-RH-MJF SILVA v. SWIFT et al*

3   *by a motion of Taylor swift filed by a lawyer(Baldridge) who was named in the*

4   *suit at one time in the suit, conspired against my rights to due process, and*

5   *without even 1 fair hearing over 7 cases for nearly 4 years. And the merits to the*

6   *lawsuit where felonious obstruction and conspiracy against rights.*

7

8   *Memorandum of law for a Declaratory Judgement*

9   *Rule 57. Declaratory Judgment*

10  *These rules govern the procedure for obtaining a declaratory judgment under 28*

11  *U.S.C. §2201. Rules 38 and 39 govern a demand for a jury trial. The existence of*

12  *another adequate remedy does not preclude a declaratory judgment that is*

13  *otherwise appropriate. The court may order a speedy hearing of a declaratory-*

14  *judgment action.*

15  (As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

16  The fact that a declaratory judgment may be granted "whether or not further relief

17  is or could be prayed" indicates that declaratory relief is alternative or cumulative

18  and not exclusive or extraordinary. A declaratory judgment is appropriate when it

19  will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often

1    involves only an issue of law on undisputed or relatively undisputed facts, it

2    operates frequently as a summary proceeding, justifying docketing the case for

3    early hearing as on a motion, as provided for in California (Code Civ.Proc.

4    (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky

5    (Codes (Carroll, 1932) Civ.Pract. §639a–3).

6    The "controversy" must necessarily be "of a justiciable nature, thus excluding an

7    advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee

8    Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).

9    The existence or nonexistence of any right, duty, power, liability, privilege,

10   disability, or immunity or of any fact upon which such legal relations depend, or of

11   a status, may be declared. The petitioner must have a practical interest in the

12   declaration sought and all parties having an interest therein or adversely affected

13   must be made parties or be cited. A declaration may not be rendered if a special

14   statutory proceeding has been provided for the adjudication of some special type of

15   case, but general ordinary or extraordinary legal remedies, whether regulated by

16   statute or not, are not deemed special statutory proceedings.

17   When declaratory relief will not be effective in settling the controversy, the court

18   may decline to grant it. But the fact that another remedy would be equally effective

19   affords no ground for declining declaratory relief. The demand for relief shall state

20   with precision the declaratory judgment desired, to which may be joined a demand

39

1  for coercive relief, cumulatively or in the alternative; but when coercive relief only

2  is sought but is deemed ungrantable or inappropriate, the court may sua sponte, if it

3  serves a useful purpose, grant instead a declaration of rights. Hasselbring v.

4  Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170 (1933). Written

5  instruments, including ordinances and statutes, may be construed before or after

6  breach at the petition of a properly interested party, process being served on the

7  private parties or public officials interested. In other respects, the Uniform

8  Declaratory Judgment Act affords a guide to the scope and function of the Federal

9  act. Compare Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461

10 (1937); Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U.S. 249 (1933);

11 Gully, Tax Collector v. Interstate Natural Gas Co., 82 F.(2d) 145 (C.C.A.5th,

12 1936); Ohio Casualty Ins. Co. v. Plummer, 13 F.Supp. 169 (S.D.Tex., 1935);

13 Borchard, Declaratory Judgments (1934), passim.

14

15 **Compensatory damages**

16 **For the 4 years ive fought Venable LLP though 4 lawsuit and 1 appeal and at**

17 **least 10 counts of 1505, I request the following**

1  **4 years at the Florida medium income $59,227 for fighting these cases with**

2  **Venable LLP total amount *236,908 usd for fighting these cases full Time* for**

3  **the last 4 years.**

4

5  **Pro se litigants are  entitled to Attorney fees and costs under the Civil**

6  **Rights Attorney's Fee Award Act of 1976, 90 Stat. 2641, as amended 42 USC**

7  **1988.**

8  **Punitive damages for the law firm Venable LLP dc location in the amount of**

9  **(124,613,608 million us dollars 526x the principle) (TXO Production**

10  **Corp. v. Alliance Resources Corp., where it affirmed an award of $10 million**

11  **in punitive damages, despite the compensatory damages being only $19,000, a**

12  **punitive-to-compensatory ratio of more than 526.)**

13  **600 Massachusetts Ave NW, Washington, DC 20001**

14  There is no maximum dollar amount of punitive damages that a defendant can be

15  ordered to pay. In response to judges and juries which award high punitive

16  damages verdicts, the Supreme Court carved out a notable exception to this rule of

17  proportionality in the case of TXO Production Corp. v. Alliance Resources Corp.,

18  **where it affirmed an award of $10 million in punitive damages, despite the**

1  **compensatory damages being only $19,000, a punitive-to-compensatory ratio**

2  **of more than 526. 526 to 1 ratio.**

3

4  _____***Memorandum of law for punitive damages***

5  Punitive damages are not intended to compensate the plaintiff. Dyna-Med, Inc. v

6  FEHC (1987) 43 C3d 1379, 1387, 341 CR 67; Newport v Facts Concerts, Inc.

7  (1981) 453 US 247, 266, 69 L Ed 2d 616, 631, 101 S Ct 2748. The reality,

8  however, is that the plaintiff is the party who receives the punitive damage award.

9  Originally, this was done because such awards made up for intangible harms, but

10  with the increase in other recoverable damages, such justification is less potent.

11  Some argue that the plaintiff should receive punitive damages because of the large

12  amounts of time, money, and effort expended to obtain these verdicts. The goal of

13  the law, however, is to make plaintiffs whole, not to reward them for zealous

14  litigation. Generally, the plaintiff receives the award "because there is no one else

15  to receive it." Shepherd Components, Inc. v Brice Petrides-Donohue & Assocs.,

16  Inc. (Iowa 1991) 473 NW2d 612, 619. The defendant's wealth is an important part

17  of the punitive damage's equation. In Las Palmas Assocs. v Las Palmas Center

18  Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301, the court stated:

A defendant's financial condition has always been relevant to the amount of punitive damages allowed. As the California Supreme Court explained in Adams v Murakami (1991)54 C3d 105, 113, 284 CR 318:

Because punitive damages are intended to punish the wrongdoer, a wealthy wrongdoer should face a higher punitive damages award than a less wealthy party. Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928, 148 CR 389 ("the function of deterrence . . . will not be served if the wealth of the defendant allows him or her to absorb the award with little or no discomfort"). Little v Stuyvesant Life Ins. Co. (1977)67 CA3d 451, 469, 136 CR 653; see also Michelson v Hamada (1994)29 CA4th 1566, 1595, 36 CR2d 343. [a]lthough appellate courts have sometimes used the terms "wealth," "financial condition" and "net worth" interchangeably [citations], clearly these terms are not synonymous. And, while "net worth" is probably the financial measurement most often used in setting the amount of punitive damages, no court has held that it is the only permissible measurement.

See also Cheung v Daley (1995)35 CA4th 1673, 1677, 42 CR2d 164; Kizer v County of San Mateo (1991) 53 C3d 139, 147, 279 CR 318. In Clark v McClurg (1932) 215 C 279, 9 P2d 505, however, an award of $5000 in punitive damages was upheld when the jury left blank the space for actual damages.

1    In Cheung, defendant was accused of fraudulently transferring real property to

2    evade satisfaction of a nuisance judgment against him. The jury found that plaintiff

3    was entitled to compensatory damages in the amount of $0. The jury further found

4    that by making the fraudulent transfers, defendant had acted with fraud,

5    oppression, or malice, and awarded punitive damages. On appeal, the court

6    concluded that "the rule of Mother Cobb's Chicken -- that an award of exemplary

7    damages must be accompanied by an award of compensatory damages–is still

8    sound. That rule cannot be deemed satisfied where the jury has made an express

9    determination not to award compensatory damages." 35 CA4th at 1677.

10    Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343; Las Palmas

11    Assocs. v Las Palmas Center Assocs. (1991)235 CA3d 1220, 1243, 1 CR2d 301

12    ("punitive damages are not awarded for the purpose of rewarding the plaintiff, but

13    to punish the defendant"); Kaye v Mount La Jolla Homeowners Ass'n (1988)204

14    CA3d 1476, 1493, 252 CR 67; Dyna-Med, Inc. v FEHC (1987) 43 C3d 1379,

15    1387, 341 CR 67 (punitive damages "serve but one purpose–to punish and through

16    punishment, to deter"); Castaic Clay Mfg. Co. v Dedes (1987)195 CA3d 444, 450,

17    240 CR 652; Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389.

18    Accordingly, punitive damages should not be greater than the amount necessary to

19    accomplish these goals. Weeks v Baker & McKenzie (1998)63 CA4th 1128, 1166,

20    74 CR2d 510; Michelson v Hamada (1994)29 CA4th 1566, 1593, 36 CR2d 343;

1    Neal v Farmers Ins. Exch. (1978)21 C3d 910, 928 n13, 148 CR 389 ("the function

2    of punitive damages is not served by an award which, in light of the defendant's

3    wealth and the gravity of the particular act, exceeds the level necessary to properly

4    punish and deter").

5    The deterrence justification for punitive damages is motivated by two objectives:

6    (1) to deter the specific defendant in the case from repeating or continuing his, her,

7    or its offensive behavior and (2) to deter, generally, other potential parties from

8    committing similar offenses. See Restatement (Second) of Torts §908. This

9    rationale of deterrence is especially strong in cases in which other measures of civil

10   damages, and the unlikely prospect of criminal prosecution, are together

11   insufficient to prevent an individual or entity from engaging in a wrongful act.

12   Indeed, absent the fear of punitive damages, a defendant may have little incentive

13   to discontinue the unlawful or harmful conduct.

14   determine the amount of punitive damages to award, the Book of Approved Jury

15   Instructions (BAJI) states that the jury should consider:

16   (1) The reprehensibility of the conduct of the defendant.

17   (2) The amount of punitive damages which will have a deterrent effect on the

18   defendant in the light of defendant's financial condition.

1   Even if plaintiff suffers only minimal damage, willful and intentional misconduct

2   may be basis for award of punitive damages, In re Baker, 18 B.R. 243, 245 (Bankr.

3   WDNY 1982).

4   Punitive damages may be awarded in a tort action arising from the parties

5   contractual relationship and other matters if the plaintiff demonstrates; (1) that the

6   defendant's conduct is actionable as independent tort; (2) the tortious conduct is of

7   an egregious nature; (3) the egregious conduct is directed toward the plaintiff; (4)

8   the defendant's conduct is part of a pattern directed at the public generally,

9   Conocophillips v. 261 E. Merrick Rd. Corp., 428 F.Supp.2d 111, 129 (EDNY

10  2006).

11  punitive damages should be reserved for cases where defendant acted with the

12  degree of malice akin to the mens rea required for most crimes, Jeffries v.

13  Harleston, 21 F.3d 1238, 1249, cert. granted, vacated on other grounds, 513 U.S.

14  996 (1994).

15  In federal cases, the factfinder may award punitive damages if the defendant's

16  conduct "was malicious, oppressive or in reckless disregard of the plaintiff's rights

17  Depending on the claim, federal actions impose varying burdens of proof

18  depending on the nature of the action.  For example, in most federal cases,

19  plaintiffs are only held to a "preponderance of the evidence" standard.

46

1

2  A cursory review of the language of the statute would lead one to believe many

3  claims, including but not limited to, fraud, breach of fiduciary duty, conversion,

4  tortious interference, misappropriation of assets, and shareholder oppression would

5  support a claim for punitive damages.  Understanding the breadth of potential

6  claims that can support a claim for punitive damages in a business dispute is

7  necessary to properly value a claim. [1]  Once a plaintiff is granted leave to amend

8  to add a claim for punitive damages they will seek financial discovery and the

9  settlement value of the case will undoubtedly increase.  Understanding the

10  plaintiff's burden in a hearing to add a claim for punitive damages is essential to

11  both prosecuting and defending such a claim.

12

13  A full-scale adversarial assault on the evidence proffered is not appropriate.  Royal

14  Marco Point One Condominium Assoc. v. QBE Ins. Corp., 2010 WL 2609367

15  (M.D. Fla. 2010) Generally, the trial court will apply the same standard as that in a

16  motion to dismiss a complaint and will view the proffered evidence in a light most

17  favorable to the movant.  Estate of Despain v. Avante Group, Inc., 900 So.2d 637

18  (Fla. 5th DCA 2005) ("We are of the view that the standard that applies to

19  determine whether a reasonable basis has been shown to plead a claim for punitive

damages should be similar to the standard that is applied to determine whether a complaint states a cause of action…We will review the record evidence and the proffer in the light most favorable to Despain and accept it as true.") (emphasis added); Wayne Frier Home Ctr. Of Pensacola, Inc. v. Cadlerock Joint Venture, 16 So.3d 1006, 1010 (Fla. 1st DCA 2009) citations omitted ("In evaluating the sufficiency of the evidence proffered in support of a punitive damages claim, the evidence is viewed in a light favorable to the moving party.  When a claim for punitive damages is made, the trial court must decide, whether there is a legal basis for the recovery of punitive damages shown by any interpretation of the evidence favorable to the plaintiff.") (emphasis added).  Furthermore, fraud, by its nature, is generally proven by circumstantial evidence.  S & S Toyota, Inc. v. Kirby, 649 So.2d 916, 919 (Fla. 5th DCA 1995) ("A wrongdoer's intent to defraud is ordinarily proved by circumstantial evidence.")

Generally, punitive damages can be awarded in an amount up to the greater of $500,000.00 or three times the amount of compensatory damages.  Fla. Stat. 768.73(1)(a) However, the amount of punitive damages may be greater upon proof that the conduct was motivated by unreasonable financial gain or specific intent to harm. No cap in Florida if intent was on purpose for punitive damages.

1  Vicariously assessed punitive damages are insurable in Florida. U.S. Concrete Pipe

2  Co., 437 So. 2d 1061. See also Highlands Ins. Co. v. McCutchen, 486 So. 2d 4

3  (Fla. Dist. Ct. App. 1986).

4  There is no maximum dollar amount of punitive damages that a defendant can be

5  ordered to pay. In response to judges and juries which award high punitive

6  damages verdicts, the Supreme Court carved out a notable exception to this rule of

7  proportionality in the case of TXO Production Corp. v. Alliance Resources Corp.,

8  where it affirmed an award of $10 million in punitive damages, despite the

9  **compensatory damages being only $19,000, a punitive-to-compensatory ratio**

10 **of more than 526.**

11

12 **Being that all judges listed committed at least 1 count of accessory to rico the**

13 **following case law applies,**

14

15

16

17

18

1    <u>UNDER RICO ACT:    When a court becomes a Criminal Enterprise</u>:

2

3        Criteria for Criminal Racketeering Enterprise

4

5    Title 42 USC § 1961. Definition. As used in this chapter-(1) "racketeering activity"

6    means:

7

8    (***A***)  ***any act or threat involving ... relating to 1503*** (relating to obstruction of

9    justice), section 1510 (relating to obstruction of criminal investigations), section

10   1511 (relating to obstruction of State or local law enforcement), section 1951

11   (relating to interference with commerce, robbery or extortion), section 1952

12   (relating to racketeering,

13

14   (B) Aiding and Abetting  and Conspiracy Against the Rights of Citizens.

15

16   Title 42 USC § 1962. Prohibited Activities.

17

1    (b) ***It shall be unlawful for any person through a pattern or racketeering activity***

2    ***or through collection of an unlawful debt to acquire or maintain, directly or***

3    ***indirectly, any interest in or control of any enterprise which is engaged in, or the***

4    ***activities of which affect, interstate or foreign commerce.***

5

6    (c) It shall be unlawful for any person employed by or associated with any

7    enterprise engaged in, or the activities of which affect, to conduct or participate,

8    directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

9    racketeering activity or collection of unlawful debt.

10     (d) It shall be unlawful for any person to conspire to violate any of the provisions

11    of subsections (a), (b), or (c) of this section. ...

12

13    Controlling Case Law Addressing Government Bodies as RICO Participants

14    Controlling case law holds that government bodies whose conduct meets the

15    definitions as applied to non-government entities also applies to them. that would

16    include state judges, federal judges, U.S. Department of Justice, and others.

17    INCLUDES:  Aiding and Abetting  and Conspiracy Against the Rights of

18    Citizens)

1

**A line of cases hold that any governmental agency, court, political office or the like could serve as a RICO "enterprise." United States v. Thompson, 685 F.2d 993, 999 (6th Cir. 1982)(en banc) cert. denied, 459 U.S. 1072 (1983). Among the government units that have been held to be "enterprises" are offices of governors and state legislators, courts, court clerks' offices. See e.g., United States v. Stratton, 649 F.2d 1066, 1072-75 (5th Cir. 1981); United States v. Clark, 656 F.2d 1259, 1261-67 (8th Cir. 1981) Office of county judge); United States v. Frumento, 405 F. Supp. 23, 29-30 (E.D. Pa. 1975), affd, 563 F.2d 1083 (3d Cir. 1977). cert, debued, 434 U.S. 1072 (1978).**

Decisions after Frumento expanded government activity to every conceivable government agency, court, or political office. United States v. Thompson, 669 F.2d 1143 (6th Cir), revd 685 F.2d 993 (6th Cir. 1982)(en banc), cert. denied, 459 U.S. 1072 (1983)

·    Each of these criminal acts were compounded by the fact that they were perpetrated by people in positions of trust, who were paid to enforce the law.

1 ·        Expanding on the number of parties involved in the series of predicate acts

2    were the unknown—but suspected—U.S. Department of Justice—parties that were

3    orchestrating the multiple schemes and conspiracies and protecting each of the

4    criminal acts of each and every one.

5

6    Title 18 U.S.C. § 1962(a) provides:

7

8    Title 18 U.S.C. § 1962(d) makes it "unlawful for any person to conspire to violate

9    any of the provisions of subsections (a), (b), or (c) of this section."

10

11    In Beauford v. Helmsley, ____ S. Ct. _____ (1989), the Supreme Court held that it is

12    not necessary to prove that multiple schemes, episodes or transactions occurred in

13    order to establish a "pattern of racketeering activity," as long as the racketeering

14    acts were "neither isolated nor sporadic."

15

16    Mail and wire fraud were a part of the scheme, as defendants used the mails and

17    telephone to carry out their schemes. The mails were used in filing court papers,

18    used to notify plaintiff of these filings,  More than two, actually dozens of

1    instances, of such mail and wire fraud occurred, in a pattern of racketeering

2    activity.

3

4    In H.J. Inc. v. Northwestern Bell Telephone Co.  vs.  U.S.      (June 26, 1989), the

5    court held:

6

7    **The Racketeer Influenced and Corrupt Organizations aCt (RICO), 18 U.S.C. '**

8    **1961-1968, which is Title IX of the Organized Crime Control Act of 1970**

9    **(OCCA), imposes criminal and civil liability** upon persons who engage in certain

10   "prohibited Activities," each of which is defined to include, as a necessary element,

11   proof of a "pattern of racketeering activity." ' 1962. "Racketeering activity" means

12   "any act or threat involving" specified state law crimes, any "act" indictable under

13   specified federal statutes, and certain federal "offenses." ' 1961(1). A "pattern"

14   requires "at least two acts of racketeering activity" within a 10-year period. '

15   19651(5).

16

17   Continuity of racketeering activity likewise may be demonstrated in a variety of

18   ways. Continuity is centrally a temporal concept, and may be either closed‒or

19   open-ended. A party alleging a RICO violation may demonstrate continuity over a

54

1    closed period by proving a series of related predicates extending over a substantial

2    period of time.

3

4    (c) Neither RICO's language nor its legislative history supports a rule that a

5    defendant's racketeering activities form a pattern only if they are characteristic of

6    organized crime. No such restriction appears in RICO's test. Nor is there any

7    language suggesting that RICO's scope should be limited to acts of an association

8    rather than an individual acting alone.

9

10   **RICO Requires no more than a slight effect upon interstate commerce.**

11   **United States v. Doherty, 867 F.2d 47, 68 (1st Cir. 1989). United States v.**

12   **Murphy, 768 F.2d 1518, 1531 (7th Cir. 1985). cert. denied, 106 S.Ct. 1188**

13   **(1986).**

14

15   **The racketeering activity is not required to benefit the enterprise. The**

16   **participants in the scheme are not required to have personally profited,**

17   **though some did.  United States v. Killip, 819 F.2d 1542, 1`549 (10th Cir. 1987.**

18

1  Congress limited the force of Rule 8(b) by loosening the statutory requirements for

2  what constitutes joint criminal activities. United States v. Friedman, 854 F.2d 535,

3  561 (2d Cir. 1988); United States v. Castellano, 610 F.Supp. 1359, 1396 (S.D.N.Y.

4  1985). If a defendant is not named in a conspiracy or RICO count, he may be

5  charged in a separate court, in the same indictment, if he is alleged to have

6  participated in the same series of acts or transactions that constituted the

7  conspiracy or RICO offense.

8

9  **Civil Liability**

10  **Section 1964(c) of the RICO Act also allows civil claims against anyone**

11  **accused of a RICO violation. When a civil RICO claim is successfully**

12  **established, the injured person automatically receives a judgment of three**

13  **times the amount of their actual damages, plus legal fees.**

14

15  Racketeering activity under federal law includes a number of criminal offenses,

16  including: Bribery; sports bribery; counterfeiting; felony theft from interstate

17  shipment; Embezzlement from Pension and Welfare funds; extortionate credit

18  transactions; Fraud relating to identification documents; fraud relating to access

19  devices; transmission of gambling information; Mail Fraud; wire fraud; financial

institution fraud; citizenship or naturalization fraud; obscene matter; Obstruction of Justice; obstruction of criminal investigation; obstruction of state or local law enforcement; witness tampering; retaliation against witness; interference with commerce, bribery, or extortion; interstate transportation in aid of racketeering; interstate transportation of wagering paraphernalia; unlawful welfare fund payments; prohibition of illegal gambling business; Money Laundering; monetary transactions in property derived from unlawful activities; murder for hire; sexual exploitation of children; interstate transportation of stolen motor vehicles; interstate transportation of stolen property; sale of stolen goods; trafficking in motor vehicles and parts; trafficking in contraband cigarettes; white slave traffic; restrictions of payments and loans to labor organizations; embezzlement from union funds.

RICO outlaws every manner in which an enterprise can be used for long-term racketeering activity. Under the law, no person may invest racketeering proceeds to acquire any interest in an enterprise; no person may acquire or maintain an interest in an enterprise through a pattern of racketeering activity; and no person associated with or employed by an enterprise may conduct that enterprise's affairs through a pattern of racketeering activity.

1

2  The punishment for violating the criminal provisions of RICO is exceptionally

3  severe. If convicted, a defendant is fined and sentenced to not more than 20 years

4  in prison for each RICO violation. Furthermore, the defendant must forfeit any

5  interest, claim against, or property or contractual right over the criminal enterprise,

6  as well as any property that constitutes the racketeering activity or that was derived

7  from the racketeering activity. Finally, RICO contains civil provisions that allow a

8  party who has been injured by a RICO defendant to recover from the defendant in

9  civil court. A successful civil RICO plaintiff may collect treble damages, or three

10  times the amount lost to the defendant, as well as attorney's fees and other costs

11  associated with the litigation. The intent of the many and various sanctions is to

12  cripple, and ultimately eradicate, organized crime enterprises.

13

14  RICO employs broad definitions to sweep a wide variety of enterprise criminal

15  activity into its purview. One of the original goals of RICO was to eliminate

16  organized-crime families. However, because Congress could not legislate against

17  specific persons or families, it was forced to use broad language to define

18  racketeering and organized crime. The far-reaching language of the statute has

19  subjected a wide range of criminal defendants to RICO's penalties. The typical

RICO defendant is far from the stereotypical violent mobster. A RICO defendant can be anyone who uses a business (including courts of law) in any way to commit two or more of the many racketeering offenses.

**Memorandum of law for this case,**

 **Section 1964(c) of the RICO Act also allows civil claims against anyone accused of a RICO violation. When a civil RICO claim is successfully established, the injured person automatically receives a judgment of three times the amount of their actual damages, plus legal fees. I at least 4 years of working full time to fight these cases vs Venable LLP the very minimum is my attorney fees for the last 4 years 236,908 dollars times 3 equals 947,632 dollars**

**RICO's civil cause of action permits private plaintiffs to recover treble damages where the plaintiff's business or property is injured because of the defendant's RICO violation.  Most commonly, a civil RICO claim alleges damages resulting from an enterprise in which the defendants were associated and in the conduct of which the defendants participated, through a pattern of two or more racketeering activities.**

1  In  Case 4:19-cv-00286-RH-MJF   Document 67   Filed 01/22/20   micheal j

2  frank struck my complaint after approving itm I believe that I was 12 days

3  away from swift defaulting on a 189,000,000 complaint because these was no

4  way to answer the complaint without admitting to over 100 year's worth of

5  felonies, so in case the court wants to know if im ever going to stop being cases

6  against swift the answer is I was 12 days away from winning 189 million

7  before asshole judge frank tossed my valid complaint to protect ms swift from

8  losing nearly 200,000,000 in a default. All allagtions in this complaint can be

9  100% proven by public trademark records. In case Case 3:20-cv-00938 before

10  Judge CAMPBELL committed over 30 year's worth of crimes declared me a

11  pauper so my forma pauperis so be granted without any delay. Please be

12  aware the next judge who commits a felony to obstruct justice in this manner

13  I will attempt a citizens arrest in their own courtroom, I had enough bravado

14  to attempt an arrest on taylor swift at her house, unarmed knowing her

15  guards where armed, the next judge who break the law involving my cases

16  will be arrested in their own courtroom, with a arrest affidavit in hand for

17  rico violations.

18  I will be filing a civil rights complaint against Andrew Mullen and scott swift

19  later this week in this district as well. Regardless of any Void order made be

20  RICO judges in all my cases.

**Conclusion**

**Due to the fact Venable LLP was the law firm that was a part of the largest**

**judicial corruption in united states history that involves more than 10 federal**

**judges and at least 2 Tennessee state judges though 4 years and 4 cases and 1**

**appeal, this court should with great haste grant a default judgement as**

**sanctions against Venable LLP.**

**Daniel James Silva, Pro se**



**_____**                    **1/6/2020**

**_PO BOX 493, Colfax, nc,27235_**

**_Celticmoon1989@yahoo.com_**

**_P.S. you saw the American people storm the capital building on 1/6/2021, this_**

**_case and all my lawsuits with swift proves the federal government only works for_**

**_the rich and powerful and works against the god fairing American people we_**

**_have had fucking enough, what do you think the American people will do once_**

**_they find out over 14 federal judges and 2 state judges protected a criminal over_**

**_4 years because she's rich and famous (total anarchy),_**

1   ***also Ive decided to dedicate this lawsuit in memory of Ashli Babbit  the unarmed***

2   ***women who was shot dead in the capital building today by a bunch of capital***

3   ***police cowards,  who shoots a unarmed women in the neck, her death will not be***

4   ***in vein, I also dedicate this lawsuit to all American people who have fought and***

5   ***died like mrs.babbit for what they believe in in and out of uniform , so that free***

6   ***American's like my myself can even file a lawsuit under the constitution.***

7   ***Ashli Babbits death was the shot heard around the world! after seeing***

8   ***what happened to her I know now I can see these lawsuits to the very end.***

9

10   ***Fote notes/ old sayings,***

11   ***( The Supreme Court has made its decision, now let them enforce it. Andrew***

12   ***Jackson….)***

13   "No man is above the law and no man is below it; nor do we ask any man's

14   permission when we ask him to obey it. Obedience to the law is demanded as a

15   right, not asked as a favor." ~ **Theodore Roosevelt**

16

17   "Law too gentle are seldom obeyed; to severe, seldom executed." ~ **Benjamin**

18   **Franklin**

"The first thing we do, let's kill all the lawyers." ~ **William Shakespeare**, Henry VI, Part 2

"Common sense often makes a good law." ~ **William O. Douglas**, Supreme Court Justice

'It usually takes 100 years to make a law, and then, after it's done its work, it usually takes 100 years to be rid of it." ~ **Henry Ward Beecher**

INTEGRITY is the key to understanding legal practice. Law's empire is defined by attitude, not territory or power or process." ~ **Ronald Dworkin**

"When a judge sits in judgment over a fellow man, he should feel as if a sword is pointed at his own heart." ~ **Talmud**

1    "The judge answers questions of law; the jury answers questions of fact." ~ **Latin**

2    **saying**

3

4    "When we lose the right to be different, we lose the privilege to be free." ~

5    **Charles Evans Hughes, Supreme Court Justice**

6

7    "By ensuring that no one in government has too much power, the Constitution

8    helps protect ordinary Americans every day against abuse of power by those in

9    authority." ~ **John Roberts, Supreme Court Justice (although Roberts is an**

10   **asshole tis still a good saying)**

11

12   "Where law ends, tyranny begins." ~ **William Pitt, British Statesman, 18th**

13   **Century**

14

15   "It takes a person with a mission to succeed." ~ **Clarence Thomas, Supreme**

16   **Court Justice**

17

18

1          **<u>Exhibits</u>**

2

3    **<u>A – copy of the arrest affidavit of officer mullen admitting to obstructing my</u>**

4    **<u>citizens arrest.</u>**

5    **<u>B 1 and B2- fraudulent mark 1989 (86369161) signature missing</u>**

6    **<u>C1 and C2 fraudulent  mark 1989 (86363039)</u>**

7    **<u>D1 and D2  swifts real name for her (1989) album</u>**

8    **<u>E1 swifts real album</u>**

9    **<u>F1 fraudulent mark</u>**

10

COMPLAINT NUMBER: 2020-0354434          WARRANT NUMBER: GS919406

PROSECUTOR: Andrew Mullen
DEFENDANT: Daniel James Silva
VICTIM:  JAY SCHAUDIES



STATE OF TENNESSEE, COUNTY OF DAVIDSON
AFFIDAVIT
**CRIMINAL TRESPASS**
T.C.A. 39-14-405

Personally appeared before me, the undersigned, **[Select one]** _X__ Commissioner, ___ Metropolitan General Sessions Judge, the prosecutor named above and made oath in due form of law that **[Select one]** __X_ he ___ she **[Select one]** _X_ personally observed ___ has probable cause to believe that the defendant named above on 05/19/2020 in Davidson County, did intentionally or knowingly enter or remain on the property of another knowing that the defendant did not have the effective consent of the property owner to do so, and that *the probable cause is as follows*:

THE DEFENDANT WAS ON THE PROPERTY AT 2201 HARDING PL. THE PROPERTY IS OWNED BY THE HARDING TRUST GROUP. THE DEFENDANT WAS TRYING TO SERVE FEDERAL RICO VIOLATION PAPERWORK TO THE RESIDENT AT THE HOME WHO IS A VERY WELL KNOWN CELEBRITY. HE WAS EXTREMELY AGITATED AND KEPT SAYING THAT HE WAS HERE TO SERVE THE PAPERWORK AND THAT THERE WAS A FELON IN THE HOME AND NEEDED TO BE ARRESTED. HE HAS BEEN TOLD TO LEAVE THE PROPERTY ON SEVERAL OTHER OCCASIONS THIS YEAR AND PREVIOUS YEARS. TODAY HE WAS ALSO ASKED TO LEAVE MULTIPLE TIME AND REFUSED. AS HE WAS PLACED INTO CUSTODY HE BEGAN SHOUTING IN ANGER AND STATING THAT HE WAS GOING TO HAVE THE OFFICERS JOBS. HE ALSO CONTINUED TO DEMAND THAT THE FEDERAL PAPERS NEEDED TO BE SERVED BY POLICE UNDER FEDERAL LAW AND THAT FAULIRE TO DUE SUCH WOULD CONSTITUITE ACCESORY CHARGES FOR THE OFFICER. OFFICER SPOKE TO THE HEAD OF RISK MANAGEMENT FOR THE GROUP WHO STATED THAT THEY HAVE HIM ON VIDEO PREVIOUSLY THERE AND OF HIM BEING ASKED TO LEAVE AND NOT COME BACK. THE DEFENDANT WAS ADAMANT THAT HE WAS THERE TO SERVE THE PAPERS AND MAKE A CITIZENS ARREST SO HE WAS LEGALLY ALLOWED TO BE THERE. HE WAS TAKEN INTO CUSTODY IN LIEU OF CITATION DUE TO THE LIKELY HOOD THE OFFENSE WOULD CONTINUE.

Prosecutor: Andrew Mullen  212309

*exhibit A*

---

### A R R E S T  W A R R A N T

---

Information on oath having been made, that on the day and year aforesaid, and in the County aforesaid, the offense of   Criminal Trespass C MISD, as aforesaid, has been committed and charging the defendant thereof, you are therefore commanded, in the name of the State, forthwith to arrest and bring the defendant before a judge of the Court of General Sessions of Davidson County, Tennessee, to answer the above charge.

Sworn to and subscribed before me on 05/19/2020 20:46:00.

/s/ Evan Harris
Norman Judicial Magistrate

Judge of the Metropolitan General Sessions Court/Commissioner

DC
CRIMINAL COURT CLERK
2020 MAY 19  PH 5:47
SERVED

# United States of America
## United States Patent and Trademark Office

# 1989 *Fraudulent Mark*

**Reg. No. 5,291,361**

**Registered Sep. 19, 2017**

**Int. Cl.: 9, 15, 16, 35, 41**

**Service Mark**

**Trademark**

**Principal Register**

S. N.
86369161

TAS RIGHTS MANAGEMENT, LLC (TENNESSEE LIMITED LIABILITY COMPANY)
718 THOMPSON LANE
SUITE 108256
NASHVILLE, TN 37204

CLASS 9: Pre-recorded CDs featuring performances by an individual in the field of music and musical entertainment; musical sound recordings; audio recordings featuring music; musical video recordings; series of musical sound recordings; musical sound recordings; video recordings featuring music; downloadable audio files featuring music and musical entertainment; downloadable video recordings featuring music and musical entertainment; downloadable musical sound recordings; downloadable ring tones for mobile phones; digital music downloadable from the Internet; video recordings featuring music and musical entertainment; audio recordings featuring music and musical entertainment; digital media, namely, downloadable audio and video recordings, and CDs featuring and promoting music and musical entertainment; downloadable multimedia files containing audio, video, artwork, graphics, hypertext, text relating to music and musical entertainment; downloadable multimedia files featuring music; downloadable electronic newsletters delivered by e-mail in the fields of music, entertainment, and musical entertainment

FIRST USE 11-10-2014; IN COMMERCE 11-10-2014

CLASS 15: Guitar picks

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 16: Sheet music; song books

FIRST USE 12-12-2014; IN COMMERCE 12-12-2014

CLASS 35: Retail and on-line retail store services featuring audio recordings, video recordings, digital media

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 41: Entertainment services in the nature of live musical performances; Entertainment services, namely, providing a website featuring photographs, non-downloadable videos, pre-recorded musical performances, and reviews in the field of music and musical entertainment; Entertainment services, namely, providing a website featuring photographs, non-downloadable videos, pre-recorded musical performances, and reviews relating to a musical artist; fan club services; providing non-downloadable digital music via a global communications network; entertainment services, namely, providing information relating to music and musical entertainment via a global communications network

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014



*Joseph Matal*

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 86-369,161, FILED 08-18-2014
WON TEAK OH, EXAMINING ATTORNEY

gov.   Attorney's Name Please

# United States of America
## United States Patent and Trademark Office

## 1989

*Fraudulent Mark*

**Reg. No. 5,380,899**

**Registered Jan. 16, 2018**

**Int. Cl.: 6, 9, 14, 16, 18, 20, 21, 24, 25, 28, 35, 41**

**Service Mark**

**Trademark**

**Principal Register**

*S. N.*
*86363039*

TAS RIGHTS MANAGEMENT, LLC (TENNESSEE LIMITED LIABILITY COMPANY)
718 Thompson Lane
Suite 108256
Nashville, TENNESSEE 37204

*C1*

CLASS 6: Metal key chains

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 9: Sunglasses; cases for mobile phones; carrying cases specially adapted for electronic equipment, namely, mobile phones and mobile computers

FIRST USE 5-20-2015; IN COMMERCE 5-20-2015

CLASS 14: Jewelry; bracelets

FIRST USE 11-26-2014; IN COMMERCE 11-26-2014

CLASS 16: Stationery; blank journals; lithographs; art prints; photographs; posters; stickers and decalcomanias; decals; notebooks

FIRST USE 12-11-2016; IN COMMERCE 12-11-2016

CLASS 18: Backpacks; handbags; tote bags; all-purpose carrying bags

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 20: Pillows

FIRST USE 11-27-2015; IN COMMERCE 11-27-2015

CLASS 21: Beverageware; drinking glasses, namely, tumblers

FIRST USE 12-11-2014; IN COMMERCE 12-11-2014

CLASS 24: Towels; beach towels; blanket throws; bed blankets; bed linen; household linen; pillow covers

FIRST USE 7-1-2016; IN COMMERCE 7-1-2016

CLASS 25: Clothing, namely, jackets, coats, bandanas, headwear, caps, hats, gloves, scarves, sweatshirts, hooded pullovers, shirts, t-shirts, jerseys, footwear, and tops for children and adults; shoes

FIRST USE 12-3-2016; IN COMMERCE 12-3-2016



Joseph Matal
Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

CLASS 28: Christmas tree ornaments and decorations; battery-activated toy LED light sticks

FIRST USE 11-26-2014; IN COMMERCE 11-26-2014

CLASS 35: Retail and on-line retail store services featuring paper goods, household linens, home furnishings, cosmetics, toiletries, clothing, jewelry, key chains, bags, collectibles, memorabilia, toys, printed publications, and printed materials

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 41: Entertainment services, namely, conducting contests; Entertainment services, namely, providing a website featuring non-downloadable multi-media content in the fields of music and musical entertainment; Entertainment services, namely, providing a website featuring non-downloadable multi-media content relating to a musical artist; Entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media materials relating to music and musical entertainment; Entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media materials relating to a musical artist; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to music and musical entertainment; Entertainment services, namely, providing a website featuring news and non-downloadable articles relating to a musical artist

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 86-363,039, FILED 08-11-2014

*[handwritten annotation: missing government attorney's Name ??]*

# United States of America

### United States Patent and Trademark Office

# T.S. 1989

**Reg. No. 5,232,958**

**Registered Jun. 27, 2017**

**Int. Cl.: 6, 9, 14, 15, 16, 18, 21, 24, 25, 28, 35, 41**

**Service Mark**

**Trademark**

**Principal Register**



*Joseph Matol*

Performing the Functions and Duties of the
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office

TAS RIGHTS MANAGEMENT, LLC (TENNESSEE LIMITED LIABILITY COMPANY)
718 THOMPSON LANE
SUITE 108256
NASHVILLE, TN 37204

CLASS 6: Metal key chains

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 9: Downloadable audio files featuring music and musical entertainment; sunglasses; musical video recordings; pre-recorded DVDs and CDs featuring performances by an individual in the field of music and musical entertainment; musical sound recordings; audio recordings featuring music; downloadable multimedia files featuring music; battery-activated light sticks; series of musical sound recordings; musical sound recordings; video recordings featuring music; downloadable video recordings featuring music and musical entertainment; downloadable musical sound recordings; digital music downloadable from the internet; video recordings featuring music and musical entertainment; audio recordings featuring music and musical entertainment; digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs featuring and promoting music and musical entertainment; downloadable multimedia files containing audio, video, artwork, graphics, hypertext, text relating to music and musical entertainment; downloadable electronic newsletters delivered by e-mail in the fields of music, entertainment, and musical entertainment; downloadable ring tones for mobile phones

FIRST USE 5-20-2015; IN COMMERCE 5-20-2015

CLASS 14: Jewelry

FIRST USE 11-26-2014; IN COMMERCE 11-26-2014

CLASS 15: Drumsticks; guitar picks

FIRST USE 4-10-2017; IN COMMERCE 4-10-2017

CLASS 16: Stationery; blank journals; art prints; posters; decals; sheet music; notebooks; photographs; song books

FIRST USE 12-11-2016; IN COMMERCE 12-11-2016

CLASS 18: Backpacks; all-purpose carrying bags

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 21: Beverageware

FIRST USE 12-11-2014; IN COMMERCE 12-11-2014

CLASS 24: Bed linen; household linen

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

CLASS 25: Clothing, namely, headwear, scarves, sweatshirts, shirts, jerseys

FIRST USE 12-2-2016; IN COMMERCE 12-2-2016

CLASS 28: Christmas tree ornaments and decorations

FIRST USE 11-26-2014; IN COMMERCE 11-26-2014

CLASS 35: Retail and on-line retail store services featuring paper goods, audio recordings, home furnishings, toiletries, jewelry, key chains, collectibles, bags, toys, household linens, memorabilia, cosmetics, printed publications, video recordings, clothing, printed materials, and digital media

FIRST USE 9-21-2016; IN COMMERCE 9-21-2016

CLASS 41: Entertainment services, namely, conducting contests; entertainment services, namely, providing a website featuring non-downloadable multi-media content in the fields of music and musical entertainment; entertainment services, namely, providing a website featuring non-downloadable multi-media content relating to a musical artist; entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media content relating to music and musical entertainment; entertainment services, namely, providing a website containing non-downloadable multi-media content featuring pre-recorded musical performances, stage performances, public appearances, photographs, and other information and multi-media content relating to a musical artist; entertainment services, namely, providing a website featuring news and non-downloadable articles relating to music and musical entertainment; entertainment services, namely, providing a website featuring news and non-downloadable articles relating to a musical artist; entertainment services in the nature of live musical performances; fan club services; entertainment services, namely, providing information relating to music and musical entertainment via a global communications network; providing non-downloadable digital music via a global communications network

FIRST USE 10-27-2014; IN COMMERCE 10-27-2014

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 86-369,455, FILED 08-18-2014
CAROLINE WOOD, EXAMINING ATTORNEY



T.S.        1989

Trademark Specimen
SN 86369455
( Swift Real Album )

Exhibit E1



Trademark   Specimen

SN 86363039

Floodlent mark

Exhibit F1

(Identical mark as 86364455)



DANIEL SILVA
(336) 918-8881
THE UPS STORE #4367
STE H
388 KNOLLWOOD ST
WINSTON SALEM NC 27103-1865

SHIP NORTHERN DIST. OF FLORIDA
TO: FEDERAL COURTHOUSE CLERK OF COURT
    111 N ADAMS ST

TALLAHASSEE FL 32301-7736

FL 323 0-01

UPS GROUND
TRACKING #: 1Z A42 903 03 5674 4691

BILLING: P/P

REF #2: AS

REF #1: 1/6/2021